Good morning. I'm Sean Cazano. I present the defendant appellant Dan Anderson. Mr. Anderson pled guilty before the district court and before sentencing moved to withdraw his guilty plea. I was not the counsel for him at the time of the guilty plea. I was appointed to represent him on the motion to withdraw. In support of the motion to withdraw, Mr. Anderson specifically declared under oath that his plea was part of a package deal. The record of the guilty plea shows no mention of a package deal at all. The government, in response to Mr. Anderson's motion and declaration, filed a declaration by his counsel at the time against Mr. Anderson. And within that declaration, she also stated that even after explaining the package deal to Mr. Anderson, etc., claiming that she had provided him adequate representation at the time. So the Rule 11 colloquy was deficient for that reason. And obviously, United States v. Caro, authored by His Honor as well as the Ninth Circuit, supports that argument. And to the point, the main point being that the prosecutor has the obligation to alert the district court that there's a package deal involved because the essence of a package deal is that there's possible coercion by co-defendants upon the person pleading guilty. And that's exactly what the evidence in the record shows in this case. There's no declaration from, for example, the prosecution stating that there was no package deal. In fact, like I explained, the only declaration submitted against Mr. Anderson makes clear that there was a package deal. That there was what? That there was a package deal. This is the first time in how many decades that I've been a judge that I've never heard the expression package deal in a criminal case. Is that what we're doing now? Making package deals? It's been happening for a while, including, for example, United States v. Caro as early as 1993. Ninth Circuit 997 F. Second 657. The entire issue in that case was the importance of discussing whether a package, whether a guilty plea is the product of a package deal or not. And that's what this guilty plea was the product of. But the district judge said it wasn't part of the package deal. He found that as a matter of fact, and he had a motion to withdraw. He never heard of a package deal. He did. How do you get around that? I mean, there he said, I was there, I saw it, I did it myself, and it wasn't a package deal. And you're asking us, though, to accept it as a fact when he says it isn't a fact. My answer is quite simple. The case that this Court asked us to further brief, Ariana Gallegos, describes that the judge has to specifically go through on the record whether someone understands the way it was appealed, for example. And in this case, the judge did not describe, did not, the quality was quite short. That's a different issue. That gets you to appeal, which you're basically doing now, and then arguing the merits of it. But I'm talking about the package deal. On the hearing, on the motion to withdraw the plea, he said it wasn't a package deal. He says, I was there, I saw him, we talked about it, and it wasn't a package deal, didn't it? But that's inaccurate. To say that the judge said that we talked about it is exactly the problem. They didn't talk about a package. That's true. He did not. The written plea agreement does not state that there was a package deal, of course. There's nothing in the record at the time of the plea called plea about a package deal or not in any shape or form. And so the only thing in the record are the two declarations that I described, which came after the guilty plea. So for the court, for the district court at the time to state in response to the motion to withdraw, there was no package deal, I find that there was no package deal, respectfully is erroneous because the only evidence in the record is that there was a package deal, evidence meaning under oath declaration, one from Mr. Anderson in support and the other by Ms. Franklin against him. So, respectfully, I think that finding is not borne out in the facts. That was my question. Correct. You have to say we should set aside that finding. This is all based on there was no testimony presented. Correct. This was all done on the papers. Correct. And you're saying the only two pieces of evidence were your client's statement and her, his former lawyer's statement. The U.S. attorney didn't submit anything? Or the assistant U.S. attorney? Correct.  In terms of evidence in the record, that's exactly, that's exactly right. The standard is a fair and just reason to allow the withdrawal of a plea because this was pre-sentencing. And so a liberal standard needs to, should have been applied. Assuming that there was, in fact, a defect in the, in the plea colloquy, where does that get you? Well, I think we still under the current case law, I think we have to, the defendant would have to show that his substantial rights were affected. And I think they were in this case. Specifically, the. I'm sorry, Mr. Kucinian, just to make sure. So to make that showing or to find that this happened, we'd have to look at the current record. It's not like we'd send it back for an examination on that issue. I believe that we can do that. As in we don't need to send it back. Okay. All right. So what is there to show that? In Mr. Anderson's declaration, he specifically stated that it was the pressure by his co-defendants that caused him to plead guilty and but. I have this with David. Do you remember his declaration? Do you remember where in the declaration you're talking about? On page 25. I'm sorry, record 25. Right. Declaration of defendant Daniel Anderson. This first sentence says I'm innocent of all the counts in the indictment currently pending against me. He understands that the withdrawal of this plea would result in a higher, possibly a higher sentence if found guilty. He states that on paragraph 4, that his attorney advised him improperly regarding the effects of his co-defendants guilty plea. And then further on paragraph 8. Now, his lawyer disputed that and the district court, I thought, resolved this against him. Correct. As to what his lawyer advised him. His lawyer said, no, I made it very clear what the situation is. And the district court, I thought, found her to be truthful. Well, I should say that specifically Mr. Anderson's statement in paragraph 4 regarding the specific advice Ms. Franklin gave him, which is that Ms. Franklin told me that Mr. Harrell's admission of guilt necessarily meant I would be found guilty of a conspiracy and all other counts charged in the pending indictment. Ms. Franklin, in response, did not specifically dispute that. She generally, in her declaration, stated that we had discussions. We talked at length during our years of discussions about how the case would look for the defense if Mr. Harrell did not go to trial. We thoroughly discussed the pros and cons, et cetera. My point is it did not, her affidavit did not specifically discount his recollection of what occurred in terms of what was deficient regarding her advice. But I want to get back, if I may. Yes, I want to get back to. About the, regarding the. Pressure from the. That's right. This is in paragraph 8, right? Correct. And there we have it. It says that he declares under oath that my co-defendants insisted that everyone had to plead guilty so that all the co-defendants would get the benefit of the pleas. This insistence of my co-defendants further coerced me to plead guilty to help my co-defendants. Contrary to the court's plea, there was a package deal, and I was induced into pleading guilty at my co-defendants' insistence. So would the result have been otherwise? The answer, I believe, is yes. Meaning if the court had gone through the colloquy and asked, is there a package deal? Are you trying, is the, your guilty plea the product of trying to help someone else? This affidavit would show that that answer would be yes. And therefore, the plea would not go forward, or at minimum, the court would have further questions about the voluntariness of his plea. The district court at the time, in that short Rule 11 plea colloquy, the only question asked was whether anyone had, I lost the tab, sorry to say, but I think the court, the district court at the time, only asked whether anyone had threatened him or his family. And so I don't think that's sufficient to address whether the district court at the time discussed whether this plea was the, was the product of coercion or to, or the product of a package deal. Your client uses the word coercion in the, in his affidavit, which, you know, carries some implications in sort of among lawyers, and it means more than just pressure, it means pressure involving some sort of threat. But it's not clear to me that that's necessary. If he's just, if they're putting pressure, sort of moral pressure on him and saying, look, come on, take the deal, because otherwise we are all cooked, you know, do it as a favor to us. I'm not sure whether that's not enough, whether he needs, he needs to rise to the level of coercion. I mean, it's one thing if you say, look, I accepted it because if I didn't, these co-defendants would have arranged for my family to get beaten. I mean, that's clearly coercion. But are you, what do you think our case law says on that point? Does it have to be that kind of threat, or is it enough if there's simply moral suasion used, sympathy? Because he doesn't really quite say he underlies a threat. Not necessarily is a weasel word in a sense. Maybe that's what he's getting at. I would agree there. You represent a lot of defendants, I would assume. Yes. You may tell, this is your best deal. If you go to trial, you're going to get convicted because all of your co-conspirators here are going to testify against you. That's necessarily plead guilty in order to get a 5K1 perhaps, to get, you know, acceptance of responsibility, all of that stuff. Isn't that really what happened here? No. I'm sorry. I didn't, did I cut you off? I'm sorry. It's okay. Your Honor, I can agree that that was the case in this particular case. Frankly, there are circumstances where that's true. If there's a notice to me that other co-defendants are going to testify against my client, be it the prosecutors told me that, but that's not what's in the evidence here. What we have here is, according to the declaration submitted by Mr. Anderson, his attorney at the time said that John Harrell is going to plead guilty. We all pled guilty the same day. Except one guy went to trial. So there wasn't a total package. Fair enough. As in, to get back to your point, how long have we had package deals? There are different types of package deals. It does not necessarily have to be. Well, I guess we have them at least as far back as 1993. Correct. Correct, Your Honor. I must say that Kerr opinion is not terribly enlightening. Whoever wrote that wasn't. I think it was an excellent opinion. And specifically ---- It could have said more. It could have said more about what coercion means or what exactly the kind of ---- But it does say that the prosecutor must alert the district court that there is a package deal. I've taken a lot of my time, and the other counsel here for John Harrell I'm sure would like to say a few things. But to answer Your Honor's question in terms of the word coercion being a weasel word. Not necessarily, necessarily being a weasel word. There are lots of weasel words in the world. Well, I would say it's pointing to the Kerr opinion. It makes clear that we don't ---- coercion or pressure, however vague those terms might be, the showing that that takes ---- that that can take place is exactly the problem with package deals. And that's why ---- and I think the affidavits are sufficient to show that. And to the extent that further hearing is necessary, clearly I'd be agreeable because Mr. Anderson was sentenced to 10 years. And I realize the sentence is not what we're appealing here, but there is integrity in the proceedings that needs to be ---- You know, if you succeed here, he may look back on those 10 years as the glory days. The risks are enormous. I understand. And he understands. And that's what he states quite clearly in his declaration. Thank you. You know, there's pressure and probably a little coercion somewhere in almost any guilty plea, especially in the way we do it today. You don't plead guilty, you go to jail longer. You don't plead guilty, you're wasting the court's time because you're guilty and so you'll get a longer sentence. And it goes on and on. And people plead guilty and maybe they've convinced themselves that they're not that guilty or that ---- But they can see the consequences of not pleading guilty, so they choose to plead guilty. Or there's all manner of influences that are exerted on people who plead guilty. So, I mean, no one took his arm and twisted it. I agree. However, of course, the case law in Rule 11 has pointed out specific, at minimum specific cases that need to be covered. We have some well-known cases where like one brother will plead guilty so that the other brother's charge is dismissed. Or a wife might plead guilty to a tax evasion case. So the husband doesn't have to go to jail because she's a lot tougher than he is. So people do this for a lot of reasons. And I don't think we need to tell you, Mr. Kojarian. Yes. As an experienced defense lawyer, defense defendants are often a very difficult situation. They are. They're always in a difficult situation when a plea is on the table. Correct. But based on the evidence in the record here, as well as the Ninth Circuit case law, I think reversal of his conviction, allowing him to withdraw his plea, which motion was made pre-sentencing. Especially these days where we've got this abomination called sentencing guidelines. Thank you. They're going away faster, Sprague. Not fast enough. Good morning, Your Honors. I represent John Harrell. Who also was out of his guilty plea. Yes. Also was out of his guilty plea. What did your client get? 300 months. He didn't have a plea agreement. Oh, that's right. I'm sorry. I knew that. So on the day of trial, he gets up and says, I'm going to plead guilty. Correct. And I'm alleging, or Mr. Harrell's alleging, we're alleging that this constituted ineffective assistance of counsel, and that that provides the fair and just reason in this case to withdraw the guilty plea. But doesn't that really come up better? And you addressed this a bit. If you could address it orally, it would help me at least. Doesn't it really come up better under 2255 where the judge can go into the details regarding the facts as to whether there really was ineffective assistance at that point in time that should allow him? You know, it certainly looks like a habeas 2255 kind of petition. At the same time, this was presented in a timely fashion in support of this motion to withdraw a plea. He wasn't asking to, you know, vacate a conviction three years down the road, five years down the road. What he was asking or what the evidence was supported is in this Rule 32e standard of a fair and just. Let me make sure I understand. If what would your client prove if he could prove it about that? I mean, he gets up and he says, I'm pleading guilty. His lawyer can't stop him. That's the kind of decision that's client-driven. There are a few things that lawyers can do and effectively overrule their clients, although I don't know that there are many lawyers who really, really will overrule their clients on important things. A client really insists. But change of plea is definitely not a strategy decision. It's a client decision. So if the defendant wants to get up and say, I'm guilty, I'm guilty, what can the lawyer do about it? What is it that he can show? Yes, I think, you know, the plea has to be knowing and voluntary. I think one of the issues here is that Mr. Jordan's complete failure to prepare in any way for a trial, a motion hearing, for any proceeding. Who denies that, of course? He denies it in a very terse declaration that was unsworn. And frankly, it's hard. Well, he came in short to it later. This isn't a case where I just have two declarations. I submitted, I believe, over 150 pages of exhibits documenting what his state of his case file was. And so, frankly, I don't think that declaration had much credibility. Certainly, if there had been any questioning, I would have been able to contradict him easily. So let's accept all of that. Let's take it as proven. So the client walks in to court and is justifiably convinced that the lawyer hasn't prepared for trial. Why is that a reason to, and he chooses to deal with that situation by pleading guilty without a plea agreement? Why is that a justification for a withdrawing guilty plea? I think it deprives Mr. Harrell of a choice. Well, he could have moved for a substitution of counsel. He could have disclosed to the court that he believes his lawyer was unprepared and had the court perhaps look into it. Why is his choice, the thing that he did, which was to just declare himself guilty, why is that in any way impaired by the fact that his lawyer was unprepared? I think our position is just that it wasn't a choice. It was the fact that it was the only thing that he could have done under the circumstances. Well, he could have done other things. I mean, maybe to a layman you can say he didn't know what else he could do. But as a matter of fact, there's lots of stuff he could have done. He could have stood up and said, I want to speak. I want to represent myself today. Or I want to speak. I asked. Or, in fact, if you told his lawyer that he wants to fire him, the lawyer would have been required to present that question to the district court. Right? Correct. Correct. And so he, in fact, could have done that. He could have informed the court himself and asked for leave to speak without going through counsel. And most of the judges would at least listen to what the client has to say and said, I'm convinced my lawyer is unprepared. He could have done that. So he did have choices. Correct. I mean, obviously, one of the issues here that cuts against him is the fact that this wasn't brought up until after the plea. Mr. Harrell is an elderly man. He did get 300 months in this case, but he had no prior convictions. He wasn't subpoenaed. He didn't raise this until he got the 300 months. It's not like. Incorrect. Okay. When did he raise this? It was after the guilty plea. He had an unappointed lawyer, a civil lawyer, I believe, a man named Brunson, come in and intervene and request that CJA counsel be appointed for the purpose of moving to withdraw the guilty plea. So it was after he received the pretrial services report where there was a recommendation of, I believe, 360 months, but it was not after he had received the sentence. Yeah, but he got a pretty clear message. Correct. Yeah. But. So it's not like the next day he said, boy, what have I done? I shouldn't have pled guilty. He went through the whole process of he talked to pretrial, right? Correct. And, you know, if he had come back with 10 months, he would have said, he's a genius, right? Correct. If his guilty plea to the sheet of the indictment had resulted in a recommendation of 10 months. Yes. You know, one of the things courts looked at. He had a lawyer at that point. He had Mr. Jordan. Oh, Mr. Jordan. Yes. The one who retained off Alex Landon and represented him for three and a half years. Who did what? Jordan had represented him. He retained off appointed CJA counsel who was a lawyer named Alex Landon and took over the case. I'm sorry. I missed what you said. Mr. Jordan. He started off with a different lawyer? Yes. A very skilled CJA lawyer named Alex Landon, who's the dean of the defense bar in San Diego. And he retained Mr. Jordan shortly therein. So he qualified for CJA. Yes. And he hired this other lawyer. Where did he get the money? His wife actually runs a, I think it's like a calligraphy business or something. So it was separate funds. What kind of business does she run? I think it has to do with calligraphy or greeting cards. But in any event, he didn't have money, but a relative or a wife or somebody provides money for him. And they hired this lawyer. So this is a retained counsel. Correct. And then the retained counsel is with him all the way through the point where he gets the shocking news from the probation report. What is it called? Pre-sentence report. Pre-sentence. Thank you. Pre-sentence report. And he sees 360 months. And at that point, he says, maybe I don't have such a good lawyer. You know, I don't want to take too much of your time. I just want to make one more point. No, it's okay. It's way in advance. It's very important. For a 75-year-old. Is that unlike the other defendant in this case and in many of the factual scenarios that are described in both my papers and the opposition involving these scenarios, it's often a situation where there is a plea agreement that is reached on the day of trial. And the client accepts that, pleads guilty, and then comes back and says, no, no. I think Mr. Anderson's client received a plea offer. And Mr. Harrell is different because he received no benefit, no plea agreement. He pled to the sheet. And he gave up any ability to challenge the result of a trial on appeal. He wasn't part of the package deal? I'm not addressing the package issue. It's not part of my case. He was, wasn't Mr. Harrell, would you describe him as the ringleader? Allegedly, yes. Huh? I guess it's not allegedly at this point. Yeah, he was positioned as the ringleader. Well, maybe that's why they made the package deal with the others. So there he is. There he is. Okay. Thank you. We'll hear from the government. Are you the package deal maker? I am not, Your Honor. I am Jason Forge. I am here on behalf of the government. And in nearly ten years of representing the government, I have never entered into a package disposition, and I did not here. You were, unlike defense counsel, you were involved in the case all the way back. All the way back. I was the only ASA assigned to this case at the outset, and I had co-counsel at the time of trial. You didn't provide an affidavit or declaration in the district court disputing the package deal allegation. I did not provide a declaration or affidavit. I'm not blaming you. I'm just trying to. I feel that I should have at this point, but I did as an officer of the court, and not using any weasel words whatsoever, explain in no uncertain terms, and I'm talking about excerpt of record page 48. I said, to clarify, there was no package deal. I imagine that's why Ms. Franklin, that was Mr. Anderson's counsel at the time, put quotes around that phrase in her declaration. Your Honor is 100% right. One of the defendants did not plead guilty at all. As you are aware, Mr. Harrell pled guilty without a plea agreement. Mr. Stavros received different arrangements, and the only remote semblance of a package deal was the fact that three of the defendants received essentially the same offer. But there was never any implication or clearly no explicit statement that they all had to plead guilty. That simply did not happen. And I think as Judge Quist pointed out, one of the defendants did not plead guilty, and that is why I don't think it's even debatable that Judge Whalen's determination that Mr. Anderson's declaration lacked credibility was an accurate determination. It's certainly not clearly erroneous. Mr. Anderson, the very paragraph of his declaration to which Mr. Kajian referred, paragraph 8, he represents under oath, at this meeting my court defendants insisted that everyone had to plead guilty so that all of the court defendants could get the benefit of the pleas. That did not happen. It's objectively false what he stated to the court. And to say that there is no evidence in the record to the contrary and the only evidence is Okay, let me... So you make this statement in open court, and your position is, and I think it's a fair one, you're an officer of the court, and so when you speak to the court, it's better than an affidavit. I mean, essentially you're an officer and you help not only the truth, I certainly consider my ethical obligations... So that's your position. I'm not arguing with that at all. And let's say that is believed, but this, of course, obviously it was. Is it still possible for Mr. Anderson to be under the impression that there was a package deal? I mean, factually. You know, you don't make a package deal, but perhaps a defense lawyer misconstrues what you have to say, or maybe Mr. Anderson misconstrues what his lawyer tells him, or perhaps Mr. Anderson hears it from one of his court defendants, look, this is a package deal, if you don't sign on. Is that factually possible? And if it is, would that be a basis for setting aside the plea even if there wasn't, in fact, no package deal? Yes, there is that factual possibility in a hypothetical scenario. I think here it is not factually possible. At least it's not factually possible to the point that the district court's determination is purely erroneous, because we do have objective facts here. Mr. Anderson's statement that everyone had to plead guilty, otherwise no one gets a deal, is objectively false. Because of Mr. Harrell? No, Mr. Harrell did plead guilty. He didn't get a plea deal. But Mr. Moore, Ken Moore did not plead guilty. He went to trial the following year. He set a new trial date that day. What happened with him? He was convicted and received more time than Mr. Anderson because he didn't get a plea deal. And I would point out that he was involved in this conspiracy, in this scheme, for a fraction of the time that Mr. Anderson was. Yet it took the jury four hours after a two-week trial to convict him of all counts. But to stay focused on your question, Justice Geis, I agree with you wholeheartedly in the hypothetical sense that it's possible that there could be a scenario where, despite the fact that there is no in-fact package deal and that the plea agreement has no provision for it, there could be a scenario where it's hypothetically possible that a counsel misrepresents what has to happen. Or misunderstands. Or misunderstands, or co-defendants do. That did not happen here factually because, first of all, Mr. Anderson was not in custody. He was fully aware that Mr. Moore's case was set for trial. He was fully aware, therefore, that his statement in his declaration was false. He also confirmed that he had read the plea agreement, gone over it with his lawyer. And we're talking about a man with a master's degree here. We're not talking about an illegal alien who has a second-grade education and doesn't speak English. We're talking about an educator and a man with a master's degree and a man who also consulted his daughter that day who's also a lawyer. So he has two lawyers to consult. His daughter is one of them. He's confirmed to the district judge under oath that he's read the plea agreement and he fully understands it. And he was asked about coercion. He was asked if there are any threats. Mr. Kajan is correct. He was asked whether there are any threats to you or a family member. And he said no. Basically your loved ones. Yes. Someone that's close to you. And that plea agreement contains an express provision on a page that he initialed. And it's not buried. It's page 23 of the excerpt of record. There are only three paragraphs on this page, and they each have fairly plain headings. And the very top one says entire agreement. This plea agreement embodies the entire agreement between the parties and supersedes any other plea agreement written in the world. It then goes on to say that any modifications must be in writing. He initialed that page, and you can see that in the lower left-hand corner. In addition to confirming under oath, he had read it and gone over with his lawyer and understood it. And I would direct your honors to a decision, although Judge Fragerson, I know he didn't write it, but in Nunez's case, United States v. Nunez, I believe the site is 223 Fed Third 956. There this court held that the parole evidence rule applies to plea agreements. And not so here. We have a scenario where not only is it factually incorrect and objectively so that there is any sort of package disposition, as the district court rightly pointed out, but anything they're trying to advance as being a package deal is extrinsic evidence and would violate a parole evidence rule. Returning again, though, to Judge Kuczynski's question, to the extent that there is a scenario, and I don't think this is one of them because I think the objective facts weigh heavily in favor of Judge Whalen's determination, and they certainly are not way in favor of a clearly erroneous assessment. But to the extent there were a scenario where a defendant's lawyer misunderstood or misrepresented because he or she just didn't want to take this case to trial and told the defendant, you have to plead guilty, otherwise all these other guys are going to get 20 years or a lot more time. That's an ineffective assistance of counsel claim. That's a 2255 type of claim. That's not what we have here, and that's not what was presented to the district court. And I think this package deal point to me embodies what I think is the essential factor for this court to keep in mind in determining all the legal issues here, and that is the factual determinations that the district court made as to both defendants. As to Mr. Harrell, the district court determined that his demeanor at the time of his plea was not at all consistent with someone who was acting under duress or doing something that he didn't want to do. The district court specifically found that he appeared very relaxed, the same as he had throughout the nearly, at that point, four years that the district court had been observing him. What possible reason would he have had, though, to just plead guilty without an agreement on the day of trial unless he really was convinced that his lawyer just wasn't up to stuff? He was never offered a plea deal, and I made it clear that his lawyer wasn't going to be offered a plea deal. Frankly, I think... Oh, I see. He was told there would be no deal. Correct. Well before that. But frankly, in light of the evidence, the overwhelming evidence against Mr. Harrell, I do think his plea was the best tactic to take. So as far as what could have been going through his head, it could have been and should have been, look, they have a mountain of evidence against me. I look like a real scoundrel in front of this judge. Maybe if I stand up there and take responsibility for a crime that spanned over a decade and ruined a lot of lives, maybe at the time of sentencing he'll say, OK, you committed a bad crime, but I respect you for taking responsibility for it, and I'm going to give you a lesser sentence as a result. The problem was he stubbled that plan by then trying to use a term we've all used today, weasel out of this plea deal. And both defendants, both defendants did not try to get out of these guilty pleas until after the pre-sentence reports came out. So they both got a little sticker shock when they saw the pre-sentence report, and it was only then, months after these pleas occurred, months after these pleas occurred, it was only then that both of these defendants said, oh, hey, I want to withdraw my guilty plea. And the timing really is a critical factor for me here, for the government here, because as we pointed out in our papers and in our sentencing papers, we were ready to go to trial in a four- to six-week trial. We had made travel arrangements for over two dozen witnesses. We had produced to the defendants, each of them, well over a hundred already marked and ready-to-go trial exhibits. We were ready to go to trial. This was not a scenario where we had been feverishly working with defense counsel for two weeks leading up to trial, trying to work out a plea agreement. At the time Mr. Anderson's plea was entered, I was up in my office typing up plea agreements because this came to us that morning. We walked in there ready to go to trial. We heard from counsel that there were some defendants who wanted to plead guilty. So we were ready to go to trial, and they knew that, and they could see that. They saw it in the exhibits that we had produced. There was nothing that we had done that would in any way betray that we were hoping to delay the trial or wanted to postpone it. We were ready to go. They saw an opportunity to postpone what I think was the inevitable and therefore put us at a disadvantage. And when they saw the PSR, they said, hey, let's rethink this thing. That's just not a fair and just reason to withdraw their pleas. And in addition to the district court's observations about Mr. Harrell's demeanor, the district court also observed that he at no time, at no time, and still to this day, has not claimed that he was aware of or concerned about any supposed lack of preparation by his defense counsel. Here we are now over two years removed from that guilty plea. Three different attorneys have looked at Mr. Harrell's case, and despite all that time and all those attorneys, they have yet to identify a single defense that could have been but was not pursued. They have yet to identify a single meritorious motion that was not filed. They have yet to identify a single witness who could be helpful but was not discovered. They have not identified a single piece of advice that was erroneous to Mr. Harrell. Getting back to, I think, one of the final questions you asked, Mr. Pachter, at the end of the day, Mr. Harrell, even if this were a properly teed-up 2255 case, there's no prejudice here. And even if his claim of lack of preparation, which is completely unsubstantiated by anybody with recipient knowledge, even if that were true, there's no prejudice here. They've had over two years to comb through all the evidence in this case, to comb through all of the law that applies to this case, and they have not pointed out one thing that any other attorney could have done that would have created a reasonable probability of a different result. Okay, Mr. Forge, thank you. Thank you. I think you all have used up your time. I'll give you a minute each if you wish to take it. First, I'd like to address specifically the panel asked that are I know Gallegos and whether the deficiency in the rule of ethnicology regarding the district court also did not go over the waiver of appeal provision in the plea agreement at all. And I don't think that was the way. But assuming that that was an argument in your brief, but assuming we consider it anyway, all it gets you is an appeal. Correct. It doesn't get you a remand or a reversal or anything else. All it does is get us to talk about the things we've been talking about. And that's what I wanted to make clear. And I don't think it was waived because specifically in my opening brief, I did state that the Rule 11 colloquy was insufficient. Granted, I went into a discussion about the lack of a specific discussion about a plea agreement because that's what was the fair and just reason to allow withdrawal of a guilty plea. But getting to the waiver of appeal provision, it wasn't discussed. It wasn't waived. The government had an opportunity to describe why it felt that the Rule 11 colloquy was complete, and they just pointed to the plea agreement itself, the written plea agreement. And we know that the written plea agreement is not good enough. The fact that some of my initial pages is not good enough. Thank you. Thank you. Mr. Proctor, do you want to take? No, I'm fine. Okay.  Case decided. Stand submitted. We'll hear argument in the last argued case on the calendar, international Norse and technology versus.
judges: Kozinski, Pregerson, Quist